# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY: NEWARK VICINAGE

| | |
|---|---|
| MARIANNE SHERWOOD AS EXECUTRIX AND PERSONAL REPRESENTATIVE OF THE ESTATE OF DENNIS R. SHERWOOD<br><br>Plaintiff,<br><br>vs.<br><br>MAERSK LINE LIMITED and the MV MAERSK KENSINGTON, *in rem*<br><br>Defendants. | Case No.:<br><br>**VERIFIED COMPLAINT**<br><br>PLAINTIFF DEMANDS TRIAL BY JURY |

Plaintiff, Marianne Sherwood, as Personal Representative and Executrix of the estate of her late husband, Dennis R. Sherwood, brings this complaint against the defendants seeking damages resulting from the December 30, 2019 death of her husband and respectfully alleges upon information and belief:

### Jurisdiction and Venue

1. Jurisdiction arises under 28 U.S.C. 1332 diversity of citizenship as against MAERSK LINE LIMITED ("MLL"), jurisdiction against the MV MAERSK KENSINGTON is *in rem*. Plaintiff specifically elects to bring her action against MLL solely on the basis of 28 U.S.C. 1332 diversity of citizenship.

2. Jurisdiction exists over the MV MAERSK KENSINGTON *in rem* by virtue of a Letter of Undertaking ("LOU") issued by the Standard Club UK Ltd. agreeing to appear, on behalf of the vessel, which is owned by defendant MLL, in the District Court of New Jersey, in lieu of plaintiff

arresting the vessel. The LOU stands as substitute security for plaintiff's *in rem* claims.

**The Parties**

3. Plaintiff, Marianne Sherwood, is the widow of Dennis R. Sherwood ("Capt. Sherwood or decedent"), a Sandy Hook Ship's Pilot who was tragically killed on December 30, 2019, when he was caused to fall off a pilot ladder while attempting to board defendant's container ship the MV MAERSK KENSINGTON.

4. On March 16, 2020 plaintiff was appointed executrix of decedent's estate by The State of New Jersey Monmouth County Surrogate's Court.

5. At all relevant times plaintiff and decedent were residents and citizens of New Jersey.

6. MLL is a Delaware stock corporation, with its principal place of business in Norfolk, Virginia.

7. MLL owns a fleet of container ships, including the MV MAERSK KENSINGTON, that regularly call upon the Port of Newark. MML is authorized to and regularly does business in New Jersey.

8. MLL, at all relevant times, was the owner of the container ship MV MAERSK KENSINGTON.

9. MLL, at all relevant times, managed, operated and controlled the MV MAERSK KENSINGTON.

10. MML, at all relevant times, hired the master, officers and crew of the MV MAERSK KENSINGTON.

11. MLL, at all relevant times, was the ISM Manager of the MV MAERSK KENSINGTON.

12. MLL, at all relevant times, was the Commercial Manager of the MV MAERSK KENSINGTON.

13. MV MAERSK KENSINGTON (at times referred to as "vessel") is an American flagged 6200 TEU container ship 299.47 meters in length, with a beam of 40 meters, bearing IMO #9333010.

14. At the time of Captain Sherwood's death, MV MAERSK KENSINGTON was in the process of coming into the Port of Newark.

**Factual Allegations**

15. Capt. Sherwood was a sea pilot, who navigated large ocean-going ships in and out of the Port of New York and New Jersey. He had over 35 years of experience having boarded and piloted thousands of ships into New York Harbor

16. Capt. Sherwood was a member of the Sandy Hook Pilot Association ("SHPA"). SHPA provides pilotage services to ships that are required by law to take a licensed pilot to enter or leave the Port of New York and New Jersey.

17. In the early morning of December 30, 2019 Capt. Sherwood was taken by the launch PHANTOM to meet the MV MAERSK KENSINGTON at sea in the vicinity of Ambrose Channel, about 7 miles off the New Jersey

coast, and within the territorial waters of New York and the United States.

18. The PHANTOM came alongside the MV MAERSK KENSINGTON at about 04:30 a.m. At the time, winds were 20 to 25 knots ("kts") with gusts over 30 kts, and seas were about 6 feet.

19. To embark aboard the MV MAERSK KENSINGTON, Capt. Sherwood had to go from the launch and climb a type of rigging know as a "combination arrangement"; a rope ladder (similar to a Jacob's ladder) hereinafter "pilot ladder", connected to a platform at the end of ship's accommodation ladder, shown below:



20. Capt. Sherwood had to climb up the pilot ladder to where a trapdoor is located, providing access to the platform at the end of the accommodation ladder. He then had to perform a combination of awkward body movements: bending backwards, twisting his trunk, extensive reaching of his arm and extensive stretching of his leg to safely attempt to transition up through the trap door and onto the accommodation ladder.

21. The difficult maneuvers Capt. Sherwood was attempting to perform to board the MV MAERSK KENSINGTON resulted because the combination arrangement did not comply with the applicable safety regulations for pilot boarding equipment, 46 C.F.R. §96.40-1, the applicable Regulations of Chapter V of the International Convention for Safety of Life At Sea, 1974 ("SOLAS V") and SOLAS Resolutions, hereinafter "SOLAS Instruments", and in other particulars hereinafter set forth.

22. The United States of America is a signatory to SOLAS V.

23. SOLAS Instruments, proper standards of seamanship and industry custom and practice, state or otherwise are in agreement that "All arrangements used for pilot transfer shall efficiently fulfill their purpose of enabling pilots to embark and disembark safely."

24. SOLAS Instruments, proper standards of seamanship and industry custom and practice, state that the pilot ladder should go through the trapdoor up to the top rail of the platform on the accommodation ladder as shown on the next page.



The pilot ladder on the MV MAERSK KENSINGTON was secured below the trapdoor, and offset to the inboard side of the platform as seen in the marked photograph in paragraph 19. This non-conformity and others set forth below prevented Capt. Sherwood from successfully completing the transition.

25. 46 CFR §96.40-1(c), SOLAS Instruments, proper standards of seamanship and industry custom and practice, requires the vessel to have means or devices to keep the combination arrangement firmly against the side of the vessel. This is accomplished via permanent connections to the hull, or alternatively using suction or magnetic pads.

26. MV MAERSK KENSINGTON did not utilize any means or device to hold the combination arrangement firmly against the side of the vessel, and instead contrarily outfitted the accommodation platform with rollers permitting the entire combination arrangement to swing up and down and away from the ship's side, due the winds and seas, compounding the difficulty in making the transition to the platform.

27. 46 CFR 21§ 96.40-1(d), SOLAS Instruments, proper standards of seamanship and industry custom and practice, require-adequate illumination for the pilot boarding equipment. MV MAERSK KENSINGTON's combination arrangement was not adequately illuminated, making it difficult for Capt. Sherwood to see how he could safely position himself to make the transition.

28. SOLAS Instruments, proper standards of seamanship and industry custom and practice, mandates that a responsible officer or seaman be stationed at the point where the pilot transitions from the rope pilot ladder to the accommodation ladder, to assist the pilot with the transition.

29. The proper position of the responsible officer or seaman is clearly illustrated by the SOLAS approved safety poster which was or should have been affixed on the MV MAERSK KENSINGTON's bridge, captioned "Required Boarding Arrangements for Pilot".



30.  Capt. Sherwood climbed up the pilot ladder to the trapdoor.  He then struggled unsuccessfully to make the transition from the pilot ladder up through the trapdoor and onto the platform.

31. The combination of the pilot ladder not extending through the trapdoor to the top of the handrail, its contrary offset and suspension from the inboard side below the platform, the accommodation ladder and the pilot ladder not being stationary and flush against the vessel's side due to lack of a means or device such as a magnetic holding system, the lack of proper lights and the adverse weather conditions made it very difficult and prevented Capt. Sherwood from transitioning from the pilot ladder to the accommodation ladder.

32. MV MAERSK KENSINGTON did not have anyone stationed on the accommodation ladder.

33.  On deck at the pilot transfer station were at least five crewmen consisting of the Second Officer, a Bosun, two Daymen and a Cadet. On the bridge was the master of the vessel. Capt. Sherwood's difficulty in making the transition was or should have been observed by all.  Capt. Sherwood's made hand gestures signaling for help. These were or should have been observed by all. Capt. Sherwood made repeated cries for help.  These were or should have been heard by all. The deckhand on the launch boat below made repeated cries to the crew on deck to render assistance. These were or should have been heard by all. At some point, the combination of hand gestures and cessation of Capt.

Sherwood's upwards movement and commotion on deck became apparent to the Master several hundred feet aft, prompting him to radio his concern to the Second Mate.

34. The deck crew eventually responded. A deck hand was ordered to descend from the main deck down the entire length of the accommodation ladder - 70 or so steps - to the platform. The attempted rescue was too late. Capt. Sherwood had fallen off the pilot ladder well before the crewman reached the platform.

35. Tragically, Capt. Sherwood landed on the steel deck of the PHANTOM sustaining grave injuries.

36. Had the MV MAERSK KENSINGTON had a crewmember stationed at the accommodation ladder to assist the pilot he would have been able to answer Capt. Sherwood's call for help and assist him in safely in making the difficult and encumbered transition onto the accommodation ladder.

37. Capt. Sherwood was conscious and breathing after the accident. The PHANTOM went back to the SHPA on station ship to pick up a crewmember who had corpsman medical training. The crewmember boarded the PHANTOM to administer first aide. Capt. Sherwood was conscious and breathing and in great pain.

38. PHANTOM then headed to shore to meet an ambulance at Staten Island. During the transit, Capt. Sherwood lost consciousness and went into cardiac arrest. CPR was administered. At about 5:44 Capt. Sherwood was transferred to an ambulance, where CPR and other lifesaving measures were administered.

39. Capt. Sherwood was taken to Richmond University Medical. Upon arrival, he was unresponsive with no pulse.

40. An autopsy performed on December 31, 2019 by the Office of the Chief Medical Examiner of New York City determined the cause of death was blunt force trauma to the torso caused by a fall from a ladder.

## FIRST CAUSE OF ACTION UNSEAWORTHINESS: WRONGFUL DEATH AND SURVIVAL ACTION

41. Plaintiff repeats the allegations contained in paragraphs 1 to 40.

42. At all relevant times, decedent was an independent contractor who performed navigation functions essential to the mission of the MV MAERSK KENSINGTON and was exposed to maritime perils and hazards of a seaman and therefore had the legal status of a Sieracki Seaman entitled to the warranty of seaworthiness.

43. Defendants owed decedent a warranty of seaworthiness which places an absolute non-delegable duty on them to provide decedent a vessel, equipment and appurtenances that were reasonably fit for their intended purposes.

44. Defendants breached this duty to decedent by failing to:

   a. provide a safe means of ingress and egress to the vessel;

   b. rig the pilot ladder to go up through the trapdoor and up to the top rail of the platform on the accommodation ladder, as per the SOLAS instruments;

c.  provide a magnetic system or other means to hold the accommodation ladder flat against the side of the vessel and prevent it from swinging away from the ship, in violation of 46 C.F.R. § 96.401(c), and to the contrary by installing rollers on the accommodation ladder thereby frustrating and aggravating the beneficial purposes § 96.401(c);

d.   to provide adequate illumination, in violation of 46 C.F.R. §96.40-1(d);

e.   to assign crew to stand by and assist the pilot at the bottom of the accommodation ladder by the trapdoor;

f.    to provide a pilot transfer arrangement to fulfill the purpose of enabling a pilot to embark and disembark safely;

g.   to identify and eliminate the risks of pilot transfer procedures created by the hazardous arrangement, equipment and gear aboard the vessel;

h.   to have a proper and adequate Safety Management System relative to pilot transfer procedures;

i.    to provide proper instructions, orders and training to vessel officers and crewmembers relating to pilot transfer procedures; and

j.   In other particulars of proper standards of seamanship, industry custom and practice, applicable codes, standards and guidelines to be obtained during discovery and or presented at trial.

45. As a result of the unseaworthy conditions listed above, decedent was caused to fall off the MV MAERSK KENSINGTON'S pilot ladder and land on the deck of the PHANTOM, sustaining painful and grave injuries that resulted in his death.

46. Plaintiff brings a wrongful death action under general maritime law, and under state law of New York, or in the alternative the New Jersey Wrongful Death Act N.J.S.A. 2A:31-1, *et. seq.*

47. As a result of, the wrongful death of decedent, plaintiff individually and on behalf of decedent's issue, has and will sustain loss of support, loss of services, loss of inheritance, loss of nature and guidance and other pecuniary losses, in an amount to be proven at trial that greatly exceeds the $75,000, exclusive of interest and cost, required for jurisdiction under 28 U.S.C. §1332.

48. Plaintiff brings a survival action for decedent's pre-death fear, fright, conscious pain and suffering in an amount that greatly exceeds the requirements of 28 U.S.C. § 1332(b) which will be proven at trial.

## SECOND CAUSE OF ACTION NEGLIGENCE: WRONGFUL DEATH AND SURVIVAL ACTION

49. Plaintiff repeats the allegations contained in paragraph 1 to 48.

50. At all relevant times, decedent was an independent contractor who performed navigation functions essential to the mission of the MAERSK KENSINGTON.

51. Defendants had a duty to provide Capt. Sherwood a safe means of ingress and egress to the vessel.

52. Defendants breached this duty to decedent by failing to:

    a.  provide a safe means of ingress and egress to the vessel;

    b.  rig the pilot ladder to go up through the trapdoor and up to the top rail of the platform on the accommodation ladder, as per the SOLAS instruments;

    c.  provide a magnetic system or other means to hold the accommodation ladder flat against the side of the vessel and prevent it from swinging away from the ship, in violation of 46 C.F.R. § 96.401(c), and to the contrary by installing rollers on the accommodation ladder thereby frustrating and aggravating the beneficial purposes § 96.401(c);

    d.  to provide adequate illumination, in violation of 46 C.F.R. §96.40-1(d);

    e.  to assign crew to stand by and assist the pilot at the bottom of the accommodation ladder by the trapdoor;

    f.  to provide a pilot transfer arrangement to fulfill the purpose of enabling a pilot to embark and disembark safely;

    g.  to identify and eliminate the risks of pilot transfer procedures created by the hazardous arrangement, equipment and gear aboard the vessel;

    h.  to have a proper and adequate Safety Management System relative to pilot transfer procedures;

    i.   to provide proper instructions, orders and training to vessel officers and crewmembers relating to pilot transfer procedures;

    j.  in other particulars of proper standards of seamanship, industry custom and practice, applicable codes, standards and guidelines to be obtained during discovery and or presented at trial.

53.  The violations of the laws and regulations cited above constitute negligence *per se* and invoke the Pennsylvania Rule, <u>The Pennsylvania</u>, 86 U.S. 125 (1873), shifting the burden to defendant to prove that their violation of the regulation could not have caused the accident.

54. As a result of the negligent acts and omissions listed above, decedent was caused to fall of the MV MAERSK KENSINGTON'S pilot ladder, and land on the deck of the PHANTOM and sustain painful and grave injuries that resulted in his death.

55. Plaintiff brings a wrongful death action under general maritime law, and under state law of New York, or in the alternative the New Jersey Wrongful Death Act N.J.S.A. 2A:31-1 et. seq.

56. As a result of the wrongful death of decedent, plaintiff individually and on behalf of decedent's issue, has and will sustain loss of support, loss of services, loss of inheritance, loss of nature and guidance and other pecuniary losses, in an amount to be proven at trial that greatly exceeds the $75,000, exclusive or interest and cost, required for jurisdiction under 28 U.S.C. §1332.

57. Plaintiff brings a survival action for decedent's pre-death fear, fright, conscious pain and suffering in an amount greatly exceeding the requirements of 28 U.S.C. § 1332(b) which will be proven at trial.

## THIRD CAUSE OF ACTION, PLED IN THE ALTERNATIVE, PUNITIVE DAMAGES FOR WRONGFUL DEATH AND SURVIVAL ACTION

58. Plaintiff repeats the allegations contained in paragraphs 1 to 57.

59. Should it be determined that decedent was not a Sieracki Seaman and plaintiff is limited to a cause of action of negligence or for any other reason, justification or circumstances; plaintiff is entitled to punitive damages.

60. Defendants' their owners, officers and managers were aware of the dangerous conditions and omissions set forth previously in the complaint including those set forth in paragraph 52 of the complaint; yet they intentionally, wantonly, callously and recklessly decided not to rectify them and to allow the pilots boarding their vessel to be exposed to such risks.

61. Defendants intentional, wanton callous and reckless conduct warrants the imposition of punitive damages, in an amount to be proven at triall.

## FOURTH CAUSE OF ACTION, PLED IN THE ALTERNATIVE, DEATH ON THE HIGH SEAS ACT ("DOHSA") NEGLIGENCE: WRONGFUL DEATH AND SURVIVAL ACTION

62. Plaintiff repeats the allegations contained in paragraphs 1 to 61.

63. Plaintiff alleges that since his accident occurred less than 12 miles off the coast it occurred within the territorial waters of the United States and

New York. Therefore, 46 U.S.C §30303 *et. seq.* Death on The High Seas

Act ("DOHSA") does not apply, as per <u>In Re: Air Crash Off of Long</u>

<u>Island</u> 209 F.3d 200 (2nd Cir 2000).

64. In the alternative, if this accident falls under DOHSA, plaintiff brings her

wrongful death actions for unseaworthiness and negligence under

DOHSA.

65. As a result of the wrongful death of decedent, plaintiff individually and on

behalf of decedent's issue, has and will sustain loss of support, loss of

services, loss of inheritance, loss of nature and guidance and other

pecuniary losses, in the amount to be proven at trial that greatly exceeds

the $75,000, exclusive of interest and cost, required for jurisdiction under

28 U.S.C. §1332.


**FIFTH CAUSE OF ACTION IN REM AGAINST MAERSK KENSINGTON:
NEGLIGENCE AND UNSEAWORTHINESS CAUSES FOR WRONGFUL DEATH
AND SURVIVAL ACTIONS**

66. Plaintiff repeats the allegations contained in paragraphs 1 to 65.

67. Plaintiff has a valid maritime lien against the MV KENSINGTON for her

claims of negligence and unseaworthiness.

68. Plaintiff individually and on behalf of decedent's issue, has and will

sustain loss of support, loss of services, loss of inheritance, loss of

nature and guidance and other pecuniary losses, in the amount to be

proven at trial that greatly exceeds the $75,000, exclusive of interest and

cost, required to for jurisdiction under 28 U.S.C. §1332, for which plaintiff

has a maritime lien against the MAERSK KENSINGTON.

69.  Plaintiff brings a survival action for decedent's pre-death fear, fright,

conscious pain and suffering in an amount greatly exceeding the

requirements of 28 U.S.C. § 1332(b) which will be proven at trial; for

which plaintiff has a maritime lien against the MAERSK KENSINGTON.

**Wherefore**, plaintiff prays:

a. That the defendants file a Statement of Right or Interest in and on behalf of the vessel MV MAERSK KENSINGTON.

b. That judgment be entered against MLL *in personum*.

c. That judgment be entered *in rem* against the MV MAERSK KENSINGTON and that judgement be satisfied by Standard Club UK Ltd. as obligated by the Letter of Undertaking.

d. That judgment be entered jointly and severally against the defendants.

e. That punitive damages be awarded as against defendant MLL.

e. That plaintiff be awarded costs, prejudgment and post judgment interest, and such other and further relief as justice may require.


TABAK, MELLUSI & SHISHA LLP


_____
Jacob Shisha
Ralph J. Mellusi to be admitted *pro hac vice*
29 Broadway, Suite 2400
New York, NY 10006
(212) 962-1590

17

**VERIFICATION OF COMPLAINT**


Marianne Sherwood states under penalty of perjury that:

I am the plaintiff in the above complaint.

I believe that all the allegations made in the complaint that I have personal knowledge of

are true.

I believe that the allegations in the complaint that I do not have personal knowledge of

are true based on information and documentation provided by my attorneys.


Dated: January    2021.
        Freehold, New Jersey


_____
        Marianne Sherwood

## VERIFICATION OF COMPLAINT

Marianne Sherwood states under penalty of perjury that:

I am the plaintiff in the above complaint.

I believe that all the allegations made in the complaint that I have personal knowledge of are true.

I believe that the allegations in the complaint that I do not have personal knowledge of are true based on information and documentation provided by my attorneys.

Dated:   January 6, 2021.
Freehold, New Jersey

_____
Marianne Sherwood

18